IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSE E. GONZALEZ, | ) | 4:13CV3016 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT P. HOUSTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Jose E. Gonzalez's ("Petitioner" or "Gonzalez") Petition for Writ of Habeas Corpus. (Filing No. 1.) Gonzalez argues that he is entitled to a writ of habeas corpus based on the following claims:

Claim One:       Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* his trial counsel (1) failed to communicate and discuss the case; (2) failed to use DNA evidence to prove Petitioner's innocence; (3) failed to object to evidence offered at the hearing on Petitioner's motion in limine; (4) entered into an improper stipulation during the hearing on Petitioner's motion in limine; (5) failed to respond to the state's Rule 404 motion; (6) failed to advise Petitioner of his rights under Rule 404; (7) failed to secure the defense witnesses requested by Petitioner; (8) failed to file the "statutory notice of intent required in sexual assault cases and failed to advise [Petitioner] of those rights under the sexual assault intent statute"; (9) did not allow Petitioner to be present during voir dire; (10) presented "out dated medical research material" during Petitioner's trial; (11) failed to object to exhibits 1 and 2; (12) failed to adequately prepare for trial; and (13) failed to object to the expert testimony of "McFee and Kerry Crosby."

Claim Two:        Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* his appellate counsel failed to raise the following issues on appeal: (1) denial of defense witnesses Andres Nolasco and Katherine Rector; (2) denial of right to be present during voir dire; (3) denial of right to a fair trial due to judicial misconduct; (4) denial of right to a fair trial due to prosecutorial misconduct; (5) denial of right to gather defense evidence; (6) denial of effective assistance of counsel; (7) denial of right to trial by an impartial jury; and (8) denial of right to a proper jury instruction.

Claim Three:     Petitioner's conviction was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments because Petitioner was "deni[ed] the right to call defense witnesses and cross[-]examine witnesses."

Claim Four:      Petitioner's conviction was obtained in violation of the Sixth and Fourteenth Amendments because Petitioner was denied the right to a speedy and fair trial.

For the reasons set forth below, a grant of a writ of habeas corpus is not warranted on any of these issues.

## I.  BACKGROUND

### A.  Conviction

On December 8, 2008, the State charged Gonzalez by information in the Dakota County District Court ("state district court") with sexual assault in the first degree. (Filing No. 7-1 at CM/ECF p. 15.)  *See also State v. Gonzalez, No. A-10-179, 2010*

2

WL 4241022, *1 (Neb. Ct. App. Oct. 26, 2010) (hereinafter referred to as "*Gonzalez I*"). The evidence presented at trial showed that:

> Gonzalez began sexually assaulting his stepdaughter during the summer of 2007. Although Gonzalez was not charged as a result of any incident that occurred prior to October 2007, the State introduced evidence of such incidents to demonstrate a continuous course of conduct by Gonzalez.

> The victim testified that during the summer of 2007, Gonzalez would come to her room after she would go to bed and would attempt to kiss her on the face and on various parts of her body, including on the area "between her legs." The victim's testimony demonstrated that this behavior continued through October 2007.

> The victim's testimony revealed that at various times between October 31, 2007, and October 31, 2008, Gonzalez would come into her room, usually at night, and take off her pants and underwear. She testified that Gonzalez would sometimes rub his penis on her vagina and that other times Gonzalez would "put his tongue in [her] vagina" or put his finger in her vagina. She testified that Gonzalez told her that he wished he could "make love" to her. She indicated that by October 2008, Gonzalez was coming into her room almost every night to touch her. At one point during this time period, Gonzalez told the victim that he knew what he was doing was wrong, but he was unable to control himself. The victim testified that Gonzalez never took off his clothes during these incidents.

> The State also presented evidence that the victim underwent a sexual assault examination. The results of that examination revealed an irregularity in the victim's hymen. Such irregularity was described as a "notch," and testimony from medical personnel indicated that such a notch was consistent with the victim's account of what had happened between the victim and Gonzalez.

> Gonzalez testified at trial. During his testimony, he denied ever inappropriately touching the victim. He testified that he was never alone

3

with the victim and that he never had the opportunity to do the things she alleged had occurred. In addition, Gonzalez testified that the victim wanted to go live with her biological father. Through his testimony, he suggested that the victim had falsely accused him of hurting her so that she would be allowed to move.

After hearing all of the evidence, the jury convicted Gonzalez of first degree sexual assault. The district court subsequently sentenced Gonzalez to 30 to 32 years' imprisonment.

*Gonzalez I*, 2010 WL 4241022 at *1-2.

Gonzalez's appeal from his conviction and sentence was dismissed by the Nebraska Court of Appeals for lack of jurisdiction because counsel did not properly complete the poverty affidavit. *Id.* at *2.

## B.    First Post-Conviction Motion

Gonzalez filed a motion for post-conviction relief ("post-conviction motion") in the state district court on December 7, 2009. (Filing No. 7-1 at CM/ECF pp. 99-101.) On January 26, 2010, the state district court granted Gonzalez post-conviction relief. (*Id.* at CM/ECF p. 110.) The state district court determined that Gonzalez's counsel failed to perfect a direct appeal, and that counsel's conduct was presumptively prejudicial. (*Id.*) As relief, the state district court granted Gonzalez a new direct appeal. (*Id.*)

## C.    New Direct Appeal

On February 22, 2010, Gonzalez filed a notice of appeal from the original criminal prosecution. (*Id.* at CM/ECF p. 1.) On direct appeal, Gonzalez argued that the state district court erred in making certain evidentiary rulings, including finding that evidence of the results of a DNA test and the testimony of the technician who

completed the DNA test were inadmissible, and also in allowing hearsay testimony from several witnesses.  Gonzalez also argued that the court erred in allowing a witness to testify about the "grooming process."  Finally, Gonzalez argued that he received the ineffective assistance of trial counsel.  (*Id.* at CM/ECF pp. 116-171.)

The Nebraska Court of Appeals denied relief on October 26, 2010, in a written opinion.  *See Gonzalez I*, 2010 WL 4241022 at *8.  The Nebraska Supreme Court denied a petition for further review on January 27, 2011.  (Filing No. 7-5 at CM/ECF p. 2.)

**D.     Second Post-Conviction Motion and Appeal**

Gonzalez filed a second motion for post-conviction relief on September 28, 2011, in the state district court.  (Filing No. 7-3 at CM/ECF pp. 21-42.)  Gonzalez argued in this motion that the state district court had committed various acts of "misconduct," and also that he had received the ineffective assistance of trial and appellate counsel.  (*Id.* at CM/ECF pp. 24-39.)

The state district court denied Gonzalez's post-conviction motion on January 4, 2012.  (*Id.* at CM/ECF pp. 107-110.)  The state district court determined that Gonzalez was not entitled to post-conviction relief because the motion "[did] not raise any new issues other than those already disposed of in his initial appeal, or issues he was aware of at the time of the initial appeal."  (*Id.* at CM/ECF p. 110.)  Gonzalez timely appealed the denial of post-conviction relief to the Nebraska Court of Appeals, which denied relief in a written opinion.  *State v. Gonzalez*, A-12-073, 2012 WL 3740570 (Neb. Ct. App. Aug. 28, 2012) (hereinafter referred to as "*Gonzalez II*"). The Nebraska Supreme Court denied a petition for further review on November 28, 2012.  (Filing No. 7-5 at CM/ECF p. 5.)

5

### E.   Habeas Corpus Petition

Gonzalez filed his Petition in this court on January 23, 2013.  (Filing No. 1.) In response to the Petition, Respondent filed an answer, brief in support of answer, and the relevant state court records.  (Filing Nos. 7, 8, and 9.)  Thereafter, Gonzalez filed a brief in support of his Petition.  (Filing No. 10.)  Gonzalez also filed an "Objection" to Respondent's Answer and Brief, which the court considers a supplemental brief filed in support of his Petition.  (Filing No. 11.)  This matter is fully submitted.

## II.  STANDARD OF REVIEW

### A.   Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts.  *See* 28 U.S.C. § 2254(d).  Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  529 U.S. at 405-406.  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable."  *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a

state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).  The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts."  *Id.* at 497.  A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims."  *Id.*  The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons.  The statute refers only to a "decision," which resulted from an "adjudication."  As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

**B.     Exhaustion Requirement**

As set forth in 28 U.S.C. § 2254(b)(1):

(b)(1)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i)     there is an absence of available State corrective process; or

(ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.

8

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief.  *Id.* at 844.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).  Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

9

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted).

## III.  DISCUSSION OF CLAIMS

### A.    Claim One

In Claim One, Gonzalez raises 13 arguments that his trial counsel was ineffective. These arguments are summarized in the introductory paragraphs of this Memorandum and Order. Because Gonzalez's appellate counsel was different from his trial counsel, Gonzalez was required to raise these 13 arguments on direct appeal. *See State v. Dunster*, 769 N.W.2d 401, 410-411 (Neb. 2009) ("Under Nebraska law, in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any

issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction reivew."). Respondent argues, and the court agrees, that all 13 parts of Claim One are procedurally defaulted.

Parts 1, 3-7, and 9-11 of Claim One were raised in Gonzalez's post-conviction motion to the state district court, and nowhere else. (*See* post-conviction motion at Filing No. 7-3 at CM/ECF pp. 31-35.) That is, the arguments were not raised on direct appeal. As such, they were not fairly presented in the Nebraska state courts and they are procedurally defaulted.

Gonzalez arguably raised Claim One, Parts 2, 8, 12, and 13 on direct appeal to the Nebraska Court of Appeals. (*See* appellate brief at Filing No. 7-1 at CM/ECF pp. 165-169.) However, the Nebraska Court of Appeals determined the record was not sufficient to address the arguments. *Gonzalez I*, 2010 WL 4241022 at *6-7. Accordingly, Gonzalez again raised these arguments to the state district court in his post-conviction motion. (Filing No. 7-3 at CM/ECF pp. 31-35.) However, his exhaustion of these arguments stopped there, as Gonzalez did not clearly raise any of the arguments to the Nebraska Court of Appeals on appeal from the state district court's denial of post-conviction relief (*see* brief at Filing No. 7-4 at CM/ECF pp. 17-27), or in his petition for further review to the Nebraska Supreme Court (*see* petition at *id.* at CM/ECF pp. 63-71). Therefore, Claim One, Parts 2, 8, 12, and 13 are also procedurally defaulted.

Notwithstanding the court's finding that Claim One is entirely procedurally defaulted, out of an abundance of caution, the court notes also that the Nebraska Court of Appeals considered and rejected Plaintiff's general arguments that his trial counsel had been ineffective. On appeal from the state district court's denial of post-conviction relief, the Nebraska Court of Appeals wrote:

Gonzalez has asserted a variety of conclusions alleging that his trial counsel was ineffective. Gonzalez has failed to allege sufficient facts to demonstrate that his counsel was in fact deficient or that such allegedly deficient performance prejudiced Gonzalez and rendered the result of his trial unreliable or fundamentally unfair. The district court did not err in denying postconviction relief on this basis.

*Gonzalez II*, 2012 WL 3740570 at *2-4.

To the extent this passage from the Nebraska Court of Appeals's opinion in *Gonzalez II* may be considered an adjudication of the merits of any argument raised in Claim One of the Petition, it is entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Moreover, this court agrees with the court's determination that Gonzalez failed to allege sufficient facts in support of his arguments. As in the state court proceedings, Gonzalez offers no specific facts or arguments in his Petition or Briefs in support of his general allegations that counsel was ineffective.

**B.    Claim Two**

In Claim Two, Gonzalez raises eight arguments that his appellate counsel was ineffective. These arguments are summarized in the introductory paragraphs of this Memorandum and Order. Gonzalez's first opportunity to raise these arguments was in his post-conviction motion. Respondent argues, and the court agrees, that Claim Two is procedurally defaulted.

Gonzalez arguably raised parts of Claim Two in his post-conviction motion to the state district court. (Filing No. 7-3 at CM/ECF pp. 38-39.) However, he did not fairly present any of the arguments now raised in Claim Two on appeal to the Nebraska Court of Appeals (*see* brief at Filing No. 7-4 at CM/ECF pp. 17-27), or in a petition for further review to the Nebraska Supreme Court (*see* petition at *id.* at CM/ECF pp. 63-71). The only arguments Gonzalez raised with respect to his

appellate counsel on appeal were very general contentions that appellate counsel should have assigned errors "appearing on the record" and should have argued that his trial counsel was ineffective.  (*See id.* at CM/ECF pp. 17-27.)  His briefs to the Nebraska Court of Appeals and the Nebraska Supreme Court do not specify what errors appellate counsel should have assigned.  For these reasons, the court finds that no part of Claim Two was fairly presented in the Nebraska state courts.

Notwithstanding the court's finding that Claim Two is entirely procedurally defaulted, out of an abundance of caution, the court notes also that the Nebraska Court of Appeals considered and rejected Plaintiff's general arguments that his appellate counsel had been ineffective.  On appeal from the state district court's denial of post-conviction relief, the Nebraska Court of Appeals wrote:

> The third basis for postconviction relief asserted by Gonzalez is that his appellate counsel was ineffective. Among the assertions of ineffective assistance of appellate counsel are claims that his appellate counsel erred in not sufficiently challenging the effectiveness of his trial counsel and in not sufficiently raising all issues that could have been raised on direct appeal. We have already concluded that Gonzalez has failed to demonstrate that his trial counsel was ineffective, and he has therefore also failed to demonstrate that his appellate counsel was ineffective in challenging his trial counsel's effectiveness. With respect to the remaining assertions of ineffective assistance of appellate counsel, Gonzalez has failed to assert sufficient facts to demonstrate that he is entitled to relief.

> When a case presents layered ineffectiveness claims, an appellate court determines the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the *Strickland* test. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). Obviously, if trial counsel was not ineffective, then the petitioner suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim. *Id.*

To the extent Gonzalez bases his assertion of ineffective assistance of appellate counsel on claims that his appellate counsel failed to sufficiently raise assertions that his trial counsel had been ineffective, our conclusion above that Gonzalez has failed to sufficiently demonstrate that his trial counsel was ineffective is dispositive. Because he has failed to demonstrate that he had any challenges to the effectiveness of his trial counsel that were meritorious, he has similarly failed to sufficiently demonstrate that appellate counsel was ineffective in his challenges to trial counsel's ineffectiveness.

To the extent Gonzalez bases his assertions of ineffective assistance of appellate counsel on other grounds, including his claims that appellate counsel failed to sufficiently raise other issues on direct appeal, he has not alleged sufficient facts to demonstrate that any other claims had merit or that the outcome of his appeal would have been different had appellate counsel acted differently. The district court did not err in denying postconviction relief on this basis.

*Gonzalez II*, 2012 WL 3740570 at \*4.

To the extent this passage from the Nebraska Court of Appeals's opinion in *Gonzalez II* may be considered an adjudication of the merits of any argument set forth in Claim Two, it is entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Moreover, this court agrees with the court's determination that Gonzalez failed to allege sufficient facts in support of his arguments that his appellate counsel was ineffective. As in the state court proceedings, Gonzalez offers no specific facts or arguments in his Petition or Briefs in support of his general allegations that counsel was ineffective.

## C.    Claim Three

In Claim Three, Gonzalez argues that he was denied "the right to call defense witnesses" and "cross[-]examine defense witnesses" in violation of the Fifth, Sixth, and Fourteenth Amendments. (Filing No. 1 at CM/ECF pp. 12-13.) Specifically,

14

Gonzalez argues that he should have been allowed to question the following individuals at trial: Katherine Rector, who would have testified about DNA evidence found on the victim's bed; Andres Nolasco, who would have testified that the victim's injuries were self-inflicted; and an expert witness to refute testimony by the state's expert witness.  (*Id.* at CM/ECF p. 13.)  Gonzalez's first opportunity to present Claim Three was on direct appeal.

Gonzalez did not argue on direct appeal that his federal constitutional rights were violated when he was not allowed to question Andres Nolasco or an expert witness to refute the state's evidence.  (*See* appellate brief at Filing No. 7-1 at CM/ECF pp. 165-169.)  Thus, these arguments were not fairly presented to the Nebraska state courts.  Moreover, because the arguments were available to Gonzalez on direct appeal, he cannot now raise them in a successive post-conviction action.  *See Hall*, 646 N.W.2d at 579.

However, Gonzalez did argue on direct appeal that his federal constitutional rights were violated when he was not allowed to present evidence of DNA found on the victim's bed.  (*See* brief to Nebraska Court of Appeals at Filing No. 7-1 at CM/ECF pp. 154-159.)  Gonzalez's argument included the contention that Katherine Rector should have been allowed to testify about the results of this DNA evidence. (*Id.* at CM/ECF p. 159.)  On direct appeal, the Nebraska Court of Appeals considered and rejected Gonzalez's argument on the merits.  The court wrote:

> Prior to trial, the State conducted a DNA test on semen found on a blanket located in the victim's bedroom. The results of this test are not included in our record; however, the parties' briefs to this court indicate that the results revealed that Gonzalez was not the source of the semen. The State filed a motion in limine requesting that evidence of the test results be kept out of trial because such results were irrelevant.
>
> In its motion, the State argued that the test results were irrelevant because, at trial, the State would only be presenting evidence that

15

Gonzalez "orally and digitally penetrated [the victim's] vagina" and the State would not be presenting any evidence that Gonzalez ever "removed his clothing from the waist down, ejaculated, or masturbated in the victim's presence." The State also emphasized that there were no allegations or evidence that Gonzalez ever had sexual intercourse with the victim. The State argued that evidence of the presence of semen belonging to someone other than Gonzalez on the blanket "is not rationally related to the issue of whether or not [Gonzalez] orally and digitally penetrated [the victim's] vagina."

Gonzalez opposed the State's motion in limine. In addition, Gonzalez requested that the court permit him to call Catherine Rector as a witness at the trial. Rector conducted the DNA testing on the blanket. Gonzalez argued that the test results and Rector's testimony were relevant because they were a part of the State's "continuing investigation." Gonzalez also argued that the absence of his DNA on the blanket disproved the victim's story in that it demonstrated that there was no physical evidence connecting him to the victim's bedroom or her bedding even though the victim alleged that most of the assaults occurred in her bedroom and on her bed.

The court granted the State's motion in limine, finding no "relevance in those samples that went to the lab because there is nothing there that ties it to the defendant." As a result of this finding, the court denied Gonzalez' request to call Rector as a witness at trial. The court ultimately concluded that "there will simply be no evidence present[ed] concerning any such [DNA] testing." Gonzalez did not raise the admissibility of the DNA evidence at any time during the trial.

On appeal, Gonzalez alleges that the court erred in finding that the results of the DNA test were not relevant; in granting the State's motion in limine; and in not allowing him to call Rector as a witness at trial. Specifically, Gonzalez argues that the results of the DNA test and Rector's testimony were relevant to disprove the victim's story and to provide an alternative explanation for some irregularities found during the victim's sexual assault examination.

Gonzalez' argument on appeal appears to primarily focus on his assertion that the test results are relevant because they provide an alternative explanation for some irregularities found during the victim's sexual assault examination. Gonzalez did not make this argument at the time of the hearing on the State's motion in limine. In fact, it appears that he has raised this argument for the first time on appeal. When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *State v. Ford*, 279 Neb. 453, 778 N.W.2d 473 (2010).

Moreover, as we mentioned above, the results of the DNA test are not included in our record. Neither the State nor Gonzalez offered into evidence the report reflecting the results of the DNA test at the hearing on the State's motion in limine or at the trial. Although certain comments in the parties' appellate briefs and in their arguments to the district court at the hearing suggest the results of the DNA test, such comments are not sufficient to definitively demonstrate the results of the test. Accordingly, we are left without sufficient evidence to demonstrate the results of the test.

Without evidence of the results of the DNA test, we are unable to review the district court's decision about the relevance of those results. It is incumbent upon the appellant to present a record which supports the errors assigned. *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006). Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed. *Id.*

Because Gonzalez failed to present us with an adequate record to review the district court's decision about the admissibility of the results of the DNA test, we affirm the decision of the district court finding such results to be irrelevant and inadmissible. In addition, we affirm the decision of the district court finding the testimony of Rector to be irrelevant and inadmissible.

*Gonzalez I*, 2010 WL 4241022 at *2-4.

The Nebraska Court of Appeals's findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Gonzalez has not argued, much less established, that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Moreover, this court agrees with the court's disposition of this issue. Gonzalez's arguments to the appellate court that the DNA evidence was relevant to the case were based entirely speculation and conjecture where no evidence of the DNA test results were a part of the record. Furthermore, in Gonzalez's Petition, he argues that the results of the DNA testing "excluded petitioner as the source of [t]he DNA found on the victim's bed-covers." (Filing No. 1 at CM/ECF p. 13.) Even if this unsubstantiated statement were true, Gonzalez does not explain why it is relevant that his semen was *not* found on the victim's bed, as the victim testified at trial that Gonzalez never removed his clothes during the incidents of sexual abuse. (*See* victim's testimony at Filing No. 7-7 at CM/ECF pp. 24-53.) The court finds that a grant of a writ of habeas corpus is not warranted on this issue.

## D.   Claim Four

In Claim Four, Gonzalez argues that he was denied his constitutional right to a speedy trial. (Filing No. 1 at CM/ECF pp. 14-15.) Gonzalez did not raise this claim in the Nebraska state courts on direct appeal. Because the argument was available to Gonzalez on direct appeal, he cannot now raise such an argument in a successive post-conviction action. *See Hall*, 646 N.W.2d at 579. Accordingly, Claim Four is procedurally defaulted.

## IV.  CAUSE AND PREJUDICE ANALYSIS

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice.[1]  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999); *see also Bell v. Attorney Gen. of the State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner.").

Here, Gonzalez argues only that, if his claims are procedurally defaulted, the court should "impute this default unto counsel."  (Filing No. 11 at CM/ECF p. 4.)  While ineffective assistance of counsel may constitute "cause" in some circumstances, "[n]ot just any deficiency in counsel's performance will do."  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).  Rather, "the assistance must have been so ineffective as to violate the United States Constitution.  In other words, ineffective assistance of counsel adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim" which must be presented to the state courts.  *Id.* (citation omitted).

---

[1]Gonzalez has not argued that the court's failure to consider the procedurally defaulted claims will result in a fundamental miscarriage of justice.  Regardless, in order for Petitioner to invoke the fundamental-miscarriage-of-justice exception, he would have to "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."  *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir.  2006).  He has not done so.

19

The Nebraska Court of Appeals considered and rejected Gonzalez's arguments that his trial and appellate counsel were ineffective, and this court must defer to the court's determinations. Furthermore, Gonzalez offers no facts or argument to support his assertion that the court should "impute" the procedural default of his claims unto counsel.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Gonzalez has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the issues raised in Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1.     This matter is dismissed with prejudice, and a separate judgment will be entered in accordance with this Memorandum and Order.

2.      The court will not issue a certificate of appealability in this matter.

DATED this 5th day of November, 2013.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.